IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN M. STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-12-802-HE |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
|   Acting Commissioner of Social | ) |
|   Security Administration[1], | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

§ 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for additional administrative proceedings.

I. Background

In her applications filed in September 2009, Plaintiff alleged that she was disabled beginning November 8, 2007, due to a broken neck and three neck surgeries, heart problems, carpal tunnel syndrome, and leg problems resulting in an inability to walk without a walker and inability to lift her arms overhead. (TR 125-127, 159). Plaintiff's applications were denied, and, at her request, a hearing *de novo* was conducted before Administrative Law Judge Wampler ("ALJ") in October 2011.

In his November 2011 decision, the ALJ found that Plaintiff met the insured status requirements for disability insurance benefits through June 30, 2010, and that she had not engaged in substantial gainful activity since November 8, 2007, her alleged disability onset date. (TR 12). Following the agency's well-established sequential evaluation procedure, the ALJ found at step two the Plaintiff had severe impairments due to cervicogenic radiculopathy, status post cervical laminectomy and revision, lumbar strain, carpal tunnel of left hand, status post surgery, arthritis of the knees, right greater than left, major depressive disorder, anxiety, and alcohol abuse. (TR 12).

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal the requirements of a listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Specifically, the ALJ considered the requirements of Listing 1.04, Listing 1.02, Listing 12.04, Listing 12.06, and Listing 12.09. (TR 13). The ALJ

determined at the fourth step, based on a review of the medial evidence and a finding that Plaintiff's testimony and statements in the record were only partially credible, that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of work at the sedentary level.[2] After finding that Plaintiff was unable to perform her previous jobs as a home health aide, records coordinator, heavy equipment operator, or waitress, the ALJ found that Plaintiff could perform other jobs available in the national economy. The ALJ reached this step five decision by relying on Rule 201.21 of the the agency's Medical-Vocational Guidelines, commonly known as the "grids," and the following findings:

> The claimant uses an assistive device such as a cane or walker due to her arthritic knees. This limitation has only a slight effect on the sedentary occupational base. She cannot reach overhead; however, her handling and fingering are not affected. Her ability to reach overhead has only a slight effect on the sedentary occupational base (SSR 85-15). The claimant's mental impairments have only a slight effect on the occupational base. Her primary care practitioner, Dr. McCauley, reported on October 30, 2009, that he is treating the claimant for anxiety/depression, but her mental condition does not impose more than minimal limitation. At her mental status examination in March 2010, the claimant stated that her mental state has not affected her ability to work.

(TR 23). The Appeals Council declined to review the ALJ's decision. (TR 1-3). Therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

---

[2] The ALJ found that Plaintiff was able to perform sedentary work that did not involve reaching overhead. The ALJ further found that Plaintiff could perform only "simple tasks with routine supervision, [could] relate to supervisors and peers on a superficial work basis, and [could] adapt to a work situation." (TR 14).

3

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Step Three

At the third step of the required sequential analysis, the ALJ is required to determine whether a claimant's impairments are "equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)(quotations and citation omitted). The ALJ must "discuss the evidence and explain why he [or she] found that [a claimant] was not disabled at step three." Id. An ALJ who states only a "summary conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment" has not provided an adequate explanation that allows for "meaningful judicial review." Id.

However, the Clifton decision does not "reject the application of harmless error analysis," and an ALJ's decision that fails to include specific step three findings may be affirmed when the step three determination is supported by "confirmed or unchallenged findings made elsewhere in the ALJ's decision," for instance, at steps four and/or five, which "conclusively preclude [a claimant's] qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." Fischer-Ross v. Barnhart, 431 F.3d 729, 733-735 (10th Cir. 2005).

To demonstrate an impairment or combination of impairments that meets or equals the requirements of a listing, a claimant must provide specific medical evidence that supports each of the required criteria of the listed impairment. See 20 C.F.R. §§ 404.1525, 416.925; Sullivan v. Zebley, 493 U.S. 521, 530 (1990)(stating that to warrant a finding of disability at step sthree a claimant must show that his or her impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")(emphasis in original).

Plaintiff contends that the ALJ erred in finding that she is not disabled *per se* under the agency's Listing of Impairments. Plaintiff's argument is based on the requirements of Listing 1.02, which the ALJ found she did not meet, and the agency's explanation of the medical criteria for this listing.

In that explanation, the agency states that with respect to the listing's criteria for "[i]nability to ambulate effectively" claimants "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They

must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. pt. 404, subpt. P, app. 1, at § 1.00(B)(2)(b)(2).

The ALJ found at step three that the medical evidence with respect to Plaintiff's arthritis in her knees did not meet or medically equal the requirements of the criteria for Listing 1.02[3] because "this impairment has not resulted in the inability to ambulate effectively or the inability to perform fine and gross movements effectively." (TR 13). The ALJ provided no further explanation for this finding. Plaintiff contends that this finding is not supported by the evidence in the record because the record shows she uses a cane or walker because of arthritis in her knees.

The record reflects that on various occasions Plaintiff has been observed using a walker or a cane and she has stated on occasion, including at the hearing, that she uses a walker or a cane. (TR 15, 156, 235, 274, 282). However, as the ALJ pointed out in

---

[3]Listing 1.02 for "[m]ajor dysfunction of a joint(s) (due to any cause)" requires: (1) "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)"; (2) "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)" and (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s)" with "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

connection with the step four RFC finding, an examining psychiatrist observed in March 2010 that Plaintiff did not appear to bear much weight on the cane she was using. (TR 20, 282). The ALJ also pointed out in connection with the step four RFC finding that an examining physician opined in February 2009 that Plaintiff's knee arthritis was of long-term nature, which the ALJ reasoned indicated she had "been able to work with it without any particular worsening in the condition." (TR 21, 338).

Nevertheless, at step three the ALJ did not discuss the regulation's explanation of the "inability to ambulate effectively" requirement, and the decision indicates that the ALJ did not accurately assess the requirement. As the Commissioner points out, the ALJ found at step four that Plaintiff had the RFC for sedentary work, including the ability to walk and/or stand (with normal breaks) for at least 2 hours total during an 8-hour workday." (TR 14). Although the Commissioner argues that this RFC finding reflects the ALJ's conclusion that Plaintiff could ambulate effectively without an assistive device, the ALJ's step four and step discussion of the evidence is not at all clear in this respect.

In the step four discussion, the ALJ recognized Plaintiff's testimony that she used a walker or a cane due to her knee condition and her testimony that she could walk only 30 to 50 feet with the walker and could not walk without the walker. (TR 15). The ALJ also stated that Plaintiff's "gait is safe and stable with a walker," apparently in consideration of the report of the consultative physical examiner. (TR 21). Additionally, in reaching the step five finding of nondisability, the ALJ recognized that Plaintiff "use[d] an assistive device such as a cane or walker due to her arthritic knees" but that this "limitation ha[d] only a slight

7

effect on the sedentary occupational base." (TR 23).

Because the ALJ did not expressly consider the medical evidence in the light of the listing's criteria and the regulatory explanation of the criteria, and because the ALJ's subsequent discussion and findings did not clarify whether the ALJ had accurately considered the listing's criteria at step three, the ALJ's step three error was not harmless.

In the Tenth Circuit Court of Appeals' decision in Murdock v. Astrue, 458 Fed.Appx. 702 (10th Cir. 2012), on which Plaintiff relies, the appellate court found that the ALJ did not discuss the evidence or provide any analysis as to why the claimant's knee impairment did not meet Listing 1.02, and therefore the ALJ erred by failing to undertake this required analysis. Additionally, the ALJ had qualified the fourth step RFC finding by stating that the claimant might require a walker for ambulating long distances but not for short distances of less than 100 feet. Id. at 704. Because this RFC finding indicated the claimant would need a walker to walk further than the distance between the bases on a baseball field, "a distance that in general is much shorter than a city block," the court concluded that the step four RFC finding did not "conclusively negate the possibility" that the claimant could meet Listing 1.02. Therefore, the step three error was not harmless. Id. at 705.

Likewise, in this case, the ALJ did not address the issue, as required by Listing 1.02, of whether Plaintiff could ambulate effectively without a walker. The ALJ's subsequent discussion reflects that the ALJ viewed the regulation as requiring only the ability to ambulate effectively with or without an assistive device. Because the ALJ's step four and step five decisionmaking indicates the ALJ could have found at step three that Plaintiff did

not have the ability to ambulate effectively without a walker, the step four and step five findings did not negate the possibility that Plaintiff's knee impairment could satisfy the requirements of Listing 1.02.[4]

Because the ALJ's decision "should be evaluated based solely on the reasons stated in the decision," Robinson v. Barnhart, 366 F.3d 1078, 1084-1085 (10th Cir. 2004), the undersigned does not, and the Court should not, consider whether the *post hoc* reasons given in the Commissioner's brief could support the ALJ's step three decision.

IV. Step Five

Plaintiff contends that the grids did not provide substantial evidence to support the Commissioner's decision in light of the presence of non-exertional impairments that more than slightly eroded the sedentary occupational base. At step five, the grid rules may be used to "short-cut" decisionmaking "whenever the claimant can perform a substantial majority of the work" in a particular RFC category. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). But the grid rules cannot be used "if there is 'more than a slight impact on the individual's ability to perform the full range of sedentary work.'" Saiz v. Barnhart, 392 F.3d 397, 400 (10th Cir. 2004)(quoting Social Security Ruling 96-9p, 1996 WL 374185, at *3).

---

[4] If, indeed, the Commissioner finds on remand that Plaintiff is disabled, and no such finding is intimated herein, the Commissioner should discuss the applicability of 42 U.S.C. §423(d)(2)(C)(providing that "[a]n individual shall not be considered to be disabled for purposes of [the Social Security Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"); 20 C.F.R. § 404.1535(a)("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

For the grids to provide substantial evidence to support the ALJ's decision, the ALJ was required to show that Plaintiff's impairments did not significantly impact her ability to perform the full range of sedentary work. Although the ALJ found that Plaintiff's use of an assistive device had "only a slight effect on the sedentary occupational base," the ALJ did not make the required findings to support this conclusion. For instance, the ALJ must first determine whether a walker or a cane was medically required for Plaintiff. See SSR 96-9p, 1996 WL 374185, at * 7 (1996). The ALJ made no such finding. The ruling advises that if "a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." Id. The ALJ did not discuss whether Plaintiff needed an assistive device only for prolonged ambulation or other reasons contemplated by the ruling.

The ruling also advises that the sedentary occupational base "may be significantly eroded" for an individual who must use an assistive device "for balance because of significant involvement of both lower extremities" whereas the use of an assistive device for "an impairment that affects one lower extremity" "may still have the ability to make an adjustment to sedentary work that exists in significant numbers." Id. The ALJ's decision does not include an adequate discussion to allow the Court to determine whether the ALJ considered the involvement of one or both of Plaintiff's lower extremities.

Additionally, the ALJ's RFC finding included the limitation that Plaintiff could only "relate to supervisors and peers on a superficial work basis." (TR 14). SSR 96-9p explains

10

that "[a] substantial loss of [mental] ability to meet any one of several basic work-related activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-9p, 1996 WL 374185, * 9 (1996). One of these abilities is "[r]esponding appropriately to supervision, co-workers and usual work situations." Id. The ruling contemplates that vocational testimony should be consulted "[w]hen an individual has been found to have a limited ability in one or more of these basic work activities." Id. The ALJ did not obtain expert vocational testimony but instead relied entirely on the grids after making the conclusory statement that "claimant's mental impairments ha[d] only a slight effect on the occupational base." (TR 23). Under these circumstances, the ALJ's step five decision based on the grid rules is not supported by substantial evidence in the record.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits and the matter be REMANDED for additional administrative proceedings consistent with this recommendation. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      July 2nd   , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v.

Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   12th   day of   June  , 2013.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE